IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO. 2:12-CR-48-MHT |
| | ) | [wo] |
| JOSEPH SANDERS | ) | |

### REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to the undersigned United States Magistrate Judge for review.  The defendant, Joseph Sanders ("Sanders" or "Defendant"), was charged in an indictment on March 8, 2012, with one count of deprivation of rights in violation of 18 U.S.C. §§ 2 and 242, one count of conspiracy to obstruct in violation of 18 U.S.C. § 1512(b)(3), one count of obstruction of justice by falsification of documents in violation of 18 U.S.C. § 1519, one count of obstruction of justice by misleading conduct in violation of 18 U.S.C. § 1512(b)(3), and one count of false statements in violation of 18 U.S.C. § 1001.  *See* Doc. 3.  Pending before this Court is Defendant Joseph Sanders' *Motion to Dismiss* (Doc. 51, filed June 29, 2012) "for failure to state an offense as the conduct complained of is not contemplated by each statute section and each section should be struck down as unconstitutionally vague."  For reasons set forth herein the Magistrate Judge recommends that the District Judge **DENY** Defendant Joseph Sanders's *Motion to Dismiss* (Doc. 51).

## I. FINDINGS OF FACT

From the allegations in Counts Ten and Fourteen of the indictment plus the arguments set out in Defendant Sanders' *Motion to Dismiss* (Doc. 51) and the Government's *Response* (Doc. 75) the operative facts are not in dispute. While the Court takes account of the allegations in the indictment, to render a decision in this regard the court need not and does not pass judgment on the truthfulness of the allegations set out in Count Ten and Fourteen of the indictment. In the Motion, Sanders implicitly concedes the evidence may be sufficient to show 1) that he made certain material statements to Alabama officials during the course of an official investigation into the circumstances of the death of Roscrast Mack, an Alabama Department of Corrections inmate; 2) the statements were false; 3) defendant Sanders then knew the statements were in fact false and intended to cover up his culpability or the culpability of someone else in the death of inmate Mack; 4) defendant Sanders did not know the matter would ultimately be investigated by a federal law enforcement agency.

## II. ISSUE

Defendant Sanders posits that Counts 10 and 14 which purport to allege violations 18 U.S.C.§1519 and 18 U.S.C. § 1512(b)(3) respectively warrant dismissal as vague and for failure to state an offense. With respect to each statute the argument rests on the fact defendant Sanders did not know any statement he made to State of Alabama authorities about the circumstances surounding the death of inmate Mack would be passed on to federal authorities thus subjecting him to potential federal criminal liability.

## III. ANALYSIS

**A.     Count Ten**

Defendant Sanders rightly concedes the issue is one of first impression in this Circuit. Inasmuch as no other binding precedent squarely presents facts where a defendant did not know or arguably have any reason to know his statements might incur federal criminal liability if they are indeed false, because no federal investigation was underway or contemplated at the time the defendant made the allegedly false statements. Defendant Sanders also rightly concedes neither statute on its face requires the declarant to know or have reason to know the statements relate to a matter which might subject the declarant to federal criminal charges.

> The text of each statute reads:
>
> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

18 U.S.C. § 1519 (2002).

> (b) Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to— [. . .] (3) hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation [1] supervised release,, [1] parole, or release pending judicial proceedings; shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(b)(3) (2008).

While there is no Supreme Court or Circuit precedent directly on point, the court notes there are various federal statutes which subject a person to federal criminal liability even though the person may not realize their actions subject them to federal criminal prosecution. For instance, a routine automobile theft case ordinarily subjects a thief exclusively to state or local prosecution for theft. Federal criminal liability would exist if the thief did not know when he stole the car that the car was an unmarked car and perchance belonged to an agency of the United States. 18 U.S.C. § 641 (2004). Federal criminal jurisdiction would likewise exist if the same person was apprehended in the stolen car one inch across the border of an adjoining state whether or not the person knew of the federal law against the interstate transportation of a stolen motor vehicle. 18 U.S.C. § 2312 (2006). Federal criminal jurisdiction would likewise exist if the thief knew of the federal law against the interstate transportation of stolen cars and diligently tried to remain within the state where he stole the car but because of fatigue, bad weather or mere accident drove the stolen car momentarily one inch cross the border of an adjoining state. *Id.* A person who has never been outside the borders of their state and commits a felony under state law and thereafter posesses a firearm is subject to federal criminal jurisdiction even if the felon did not know the firearm traveled in interstate or foreign commerce 18 U.S.C §922(g) (2005). One conducting a fraud which uses the wires or mail subjects one to federal prosecution whether one knows that a wire transmission will be sent or that the mails will be used. 18 U.S.C. §§ 1341, 1343 (2008). In

fact, one who engages in a conspiracy or aids and abets a crime set out in federal law is subject to federal prosecution even though the coconspirator or aider and abetter did not know most of the details of the crime or the identity of a coconspirator who committed the underlying crime so long as the crime was reasonably foreseeable. 21 U.S.C. 846 (1988). As long as one knows and intends to commit certain acts which violate the law, criminal prosecution is permissible, and permissible by federal authorities even though one may not be aware that one of the ramifications of the act is federal criminal liability.

Generally, an indictment is sufficient if it contains a "plain, concise, and definite written statement of the essential facts constitting the offense charged." FED. R. CRIM. P. 7(c)(1). An indictment is legally sufficient if it (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to defend against, and (3) enables the accused to invoke the double jeopardy clause in any subsequent prosecution for the same offense. *United States v. Schmitz*, 634 F. 3d 1247, 1259-0 (11th Cir. 2011) (citing *United States v. Jordan*, 582 F. 3d 1239, 1245 (11th Cir. 2009)); *see also Hamling v. United States*, 418 U.S. 87, 117 (1974). An indictment which tracks the language of the statute is "generally sufficient" as long as "those words of themselves fully, directly and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offense intended to be punished." *United States v. Ramos*, 666 F.2d 469, 474 (11th Cir. 1982) (quoting *United States v. Carll*, 105 U.S. 611, 612, 26 L.Ed. 1135 (1882)). Sanders concedes and the Magistrate agrees that the indictment meets the general requirements for

sufficiency. Thus, the Magistrate Judge turns to the nearest precedent to decide whether the charges at issue must specify, and facts at trial prove, that Sanders knew the statements would subject him to federal criminal jurisdiction.

First, all the circuits to address precisely whether a defendant need know of the potential federal prosecution at the time the defendant makes the false statement hold against defendant Sanders.[1] *United States v. Gray*, 642 F. 3d 371, 378 (2nd Cir. 2011); *United States v. Moyer*, 674 F. 3d 192, 208 (3rd Cir. 2012); *United States v. Kernell*, 667 F. 3d 746, 753 (6th Cir. 2012); *United States v. Yielding*, 657 F. 3d 688, 714 (8th Cir. 2011). The common thread among the Circuits who reject the argument of defendant Sanders is the statute on its face does not require a defendant to know that a federal investigation is ongoing. Generally, the rulings reflect the principles that courts resist reading words or elements into a statute that do not appear in the statues and that the *mens rea* element of a crime does not extend to the jurisdictional element of the crime. *See Bates v. United States*, 522 U.S. 23, 29 (1997); *Moyer*, 674 F.3d at 208. The Magistrate Judge finds the analysis of each of the foregoing cases persuasive even though no binding precedent exists in this Circuit.

To the extent any binding circuit precedent may illuminate the matter, indications are the issue will be decided against defendant Sanders even assuming that he did not know or could not have known the statements might become part of a federal inquiry. In *United States v. Fontenot*, Fontenot made the same argument as Sanders, but did not object to the

---

[1] The Magistrate Judge notes with appreciation that Counsel for defendant Sanders was very forthright in citing the authorities contrary to his argument.

jury instruction at trial that the defendant need not know his statement would obstruct a federal investigation. 611 F. 3d 734, 737 (11th Cir. 2010) *cert. denied*, 131 S. Ct. 1601, 179 L. Ed. 2d 504 (U.S. 2011). Under a plain error standard of review, Fontenot's knowledge argument failed. *Id.* at 738. Seemingly, *Fontenot* found the error not to be plain, in part, because the statute on its face does not require a declarant to know that a federal investigation is ongoing. The concurrence in *Fontenot* determined that the legislative history indicates Congress intended for 18 U.S.C. § 1519 to "apply broadly." *Id.* at 739. Senator Leahy's report broke down § 1519 in the following manner, clearly emphasizing the jurisdictional statement and separating it from the elements of the crime:

> Section 1519 is meant to apply broadly to any acts to destroy or fabricate physical evidence so long as they are done with the intent to obstruct, impede or influence the investigation or proper administration of any matter, *and such matter is within the jurisdiction of an agency of the United States*, or such acts done either in relation to or in contemplation of such a matter or investigation.

*Id.* at 737-38 (quoting S.Rep. No. 107–146, at 14 (2002)) (emphasis added). Senator Leahy's remarks on the floor while introducing the bill he co-sponsored are clear that the *mens rea* element does not extend to the jurisdictional element when he said "[t]he fact that a matter is within the jurisdiction of a federal agency is intended to be a jurisdictional matter, and not in any way linked to the intent of the defendant." *Id.* at 739 (quoting 148 Cong. Rec. S1783–01, S1786 (daily ed. Mar. 12, 2002) (statement of Sen. Leahy). Senator Leahy further stated that the "intent of the provision is simple; people should not be destroying, altering, or falsifying documents to obstruct *any* government function." S. Rep. No. 146, S. REP.

107-146, 15 (2002) (emphasis added).

While the Magistrate Judge did not hold an evidentiary hearing, the essential facts are not in dispute. Additional facts may be raised at trial which demonstrate that Sanders did not notify federal authorities that there may be an inconsistency with the alleged claims made. This may be sufficient, even under Sanders' theory, to show that a jury may infer that he was making a statement within the purview of the statute at issue. Assuming *arguendo* that such facts exist, upon actually having notice that a federal investigation was pending on the matter, Sanders at that time would have had an opportunity to recant any alleged false claims that may have been made. At this early stage, there is no indication in the pleadings that Sanders recanted any of the alleged false claims to any federal agent upon learning of the existence of a federal investigation. Having the knowledge of a federal investigation, Sanders, unless evidence can be presented otherwise, potentially allowed the federal agents to rely on the alleged false statements, which would result in a continuing crime.

From its survey of the federal criminal code and the analogous but nonbinding precedent, the Magistrate Judge concludes the matter hinges on the difference between knowledge of one's actions and knowledge of the ramifications of one's actions. As previously mentioned, as long as one knows and intends to commit certain acts which violate the law, criminal prosecution is permissible, and permissible by federal authorities even though one may not be aware that one of the ramifications of the act is federal criminal liability. *Mens rea* generally does not extend to matters of jurisdiction. Viewed through the

lens of knowledge of one's actions and the ramifications of the action, the issue is as old and constant as the first legal issue known to western civilization- whether Adam and Eve may righly suffer earthly punishment for an act knowingly done against heavenly law but without knowledge of the full ramifications of the consequences of their act. Then and now the answer, in the opinion of the Magistrate Judge, is yes.

**B.     Count Fourteen**

Sanders also asserts that Count Fourteen of the indictment is due to be dismissed. *See* Doc. 51 at 8. Sanders correctly cites to *United States v. Veal*, as a controlling case in this Circuit. 153 F.3d 1233 (11th Cir. 1998). In *Veal*, the Government alleged that the defendants in *Veal* "misled state investigators by not telling them the true circumstances surrounding [the victims] death to prevent the investigators from learning the actual facts of his death and, thereby, precluding their communicating those facts to the Federal Bureau of Investigation, the United States Department of Justice, and judges of the United States." The Eleventh Circuit held that the conduct of the defendants fell within the broad language of § 1512(b)(3). *Id.* at 1245-46. The defendants were charged and evidence was presented at trial that proved "that false or contrived and misleading information was given to *state* investigators with no knowledge or intent that this information would be communicated to *federal* authorities relative to a *federal* crime or investigation." *Id.* at 1247-48.

The Eleventh Circuit determined that "federal jurisdiction under § 1512(b)(3) is based on the federal interest of protecting the integrity of potential federal investigations by

ensuring that transfers of information to federal law enforcement officers and judges relating to the possible commission of federal offenses be truthful and unimpeded." *Id.* at 1250. The court further determined that on its face, "§ 1512(b)(3) does not depend on the existence or imminency of a federal case or investigation but rather on the *possible* existence of a federal crime and a defendant's intention to thwart an inquiry into that crime." *Id.* Section 1512(b)(3) protects an important federal interest by "[s]eeking to foster the communication of truthful, nonmisleading information to federal authorities regarding a possible federal crime." *Id.* at 1251.

The court found that to establish a violation of § 1512(b)(3), "it is sufficient if the misleading information is *likely* to be transferred to a federal agent," and all that is required for a defendant's violation of § 1512(b)(3) "was the *possibility* or *likelihood* that their false and misleading information would be transferred to federal authorities irrespective of the governmental authority represented by the initial investigators. *Id.* at 1251-52 (citing *United States v. Fortenberry*, 971 F.2d 717, 719-20 n. 9 (11th Cir.1992)). Likewise, the court found that:

> § 1512(b)(3) does not require that a defendant know the federal nature of the crime about which he provides information because the statute criminalizes the *transfer* of misleading information which actually relates to a *potential* federal offense, regardless of whether the communicator of such information knows or believes that the crime about which he knowingly provides false or misleading information is federal.

*Id.* at 1252. The court held that "[b]y its plain wording, § 1512(b)(3) is designed to ensure that information received by federal investigators or judges regarding a potential federal

crime be correct, truthful, and complete to facilitate a full and fair investigation and adjudication." *Id.* The court further held that it "is irrelevant to that inquiry whether the person who provides false or misleading information that ultimately becomes relevant to a federal investigation *intended* that a federal investigator or judge receive that information; it is relevant only that a federal investigator or judge *received* it.  *Id.* (citing *Fortenberry*, 971 F.2d at 720 n. 9).

It is clear, and Sanders concedes, that under *Veal*, the *Motion to Dismiss* is due to be denied.  However, Sanders argues that a subsequent United States Supreme Court case ruling on a separate subsection of § 1512 requires a different standard.  In *Fowler v. United States*, the Supreme Court analyzed § 1512(a)(1)(C), which contains very similar language as § 1512(b)(3), but rather applies to charges of murder and attempted murder to prevent communication to federal officials.[2]  131 S. Ct. 2045, 2052, 179 L. Ed. 2d 1099 (2011). Sanders asserts that since the *Fowler* ruling on subsection (a)(1)(C) was issued subsequent to the *Veal* ruling on subsection (b)(3), and in light of the similar language, the *Fowler* ruling "should temper, if not overturn, the holding of *Veal*."  *See* Doc. 51 at 9.

*Fowler* reached the Supreme Court on the appeal of an Eleventh Circuit decision. *See United States v. Fowler*, 603 F.3d 883, 885 (11th Cir. 2010) *cert. granted,* 131 S. Ct. 596,

---

[2] The relevant subsection of 18 U.S.C. 1512 reads as follows: (a)(1) Whoever kills or attempts to kill another person, with intent to— (C) *prevent the communication* by any person *to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a Federal offense or a violation of conditions of probation, parole, or release pending judicial proceedings*; shall be punished as provided in paragraph (3).  The added italics represent the language that mirrors that of subsection (b)(3).

178 L. Ed. 2d 433 (U.S. 2010) and *vacated and remanded*, 131 S. Ct. 2045, 179 L. Ed. 2d 1099 (U.S. 2011) and *vacated and remanded*, 654 F.3d 1178 (11th Cir. 2011). In the Eleventh Circuit opinion, the Court held that the "*possible* or *potential* communication to federal authorities of a possible federal crime is sufficient for purposes of section 1512(a)(1)(C)." *Id.* at 888. The Supreme Court, however, found that fashioning a standard based around the word "likely" is more consistent with the statute's language and objectives. *Fowler*, 131 S. Ct. at 2052. The Court consequently held that "(in a case such as this one where the defendant does not have particular federal law enforcement officers in mind) the Government must show *a reasonable likelihood* that, had, *e.g.*, the victim communicated with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer." *Id.* In short, the government "must show that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical." *Id.*

      The defendant argues that the Supreme Court's holding in *Fowler* effectively overrules *Veal*. The Supreme Court, however, does not at any time refer to *Veal* or § 1512(b)(3) in its Opinion. Therefore, this Court must rely solely on the holding in *Veal* which is directly on point and binding precedent in this Circuit. Unless and until the Eleventh Circuit adopts the Supreme Court's ruling in *Fowler*, or the Supreme Court issues a holding with respect to § 1512(b)(3), *Veal* will continue to be the controlling precedent on the issue.

Even if the undersigned were to agree with Sanders' position, the Court would be unable to issue an opinion on the issue at this early stage. Determining whether a "reasonable likelihood" existed that a communication would have been made to a federal official requires the Magistrate Judge to make a determination of fact. Courts have held that "[i]t is now well-established that, at this stage of a criminal action, the court may not "look[] beyond the face of the indictment and rul[e] on the merits of the charges against [a defendant]." *United States v. Miller*, 694 F. Supp. 2d 1259, 1267 (M.D. Ala. 2010) (citing *United States v. Salman*, 378 F.3d 1266, 1267 (11th Cir.2004); and *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir.1992) (per curiam)). The Eleventh Circuit has explained that "[t]here is no summary judgment procedure in criminal cases." *Salman*, 378 F.3d at 1267 (quoting *Critzer*, 951 F.2d at 307). Consequently, the *Motion to Dismiss* Count Fourteen is due to be denied.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that the District Judge **DENY** the *Motion to Dismiss* (Doc. 51).

It is further ORDERED that the Plaintiff file any objections to this Recommendation on or before **January 18, 2013**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not

appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 4th day of January, 2013.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE